IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No.: 3:23-CR-3 |
| | : | |
| JOSE GUADALUPE FAVELA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and Jose Guadalupe Favela, hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as follows:

### (1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the Government's evidence.

### (2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' proof, and to present witnesses and evidence in Defendant's own behalf. Defendant

1



understands that Defendant would have the right to testify in Defendant's own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Defendant therefore agrees that at sentencing, the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)    The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count Three of the Indictment which charges Defendant with Distribution of Methamphetamine.

(B)    That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant on Count One *Three* to a maximum sentence of LIFE imprisonment, a mandatory minimum sentence of Ten (10) years imprisonment, a maximum fine

2



of $10,000,000.00, or both, and a term of supervised release of at least Five (5) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C)     The Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigative Report and found by the Court to be the correct guideline range.

(D)     The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigative Report has been completed. The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the Presentence Investigative Report and challenge any facts reported therein. The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Presentence Investigative Report or the Court's rulings thereon will not be grounds for withdrawal of the plea of guilty.

(E)     Defendant understands and has discussed with Defendant's attorney that after the Court determines the applicable guideline range of this case, the Court has the authority under certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

3

(F)     Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     **Waiver of Appeal Rights and Right of Collateral Attack:**

Understanding that Title 18, United States Code, Section 3742 provides for appeal by a Defendant of the sentence under certain circumstances, Defendant waives any right to appeal the imposition of sentence upon Defendant, including the right to appeal the amount of restitution imposed, if any, except in the event that the District Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the District Court at the time of sentencing, or in the event that the District Court imposes a sentence in excess of the statutory maximum.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under Title 28, United States Code, Section 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by Title 28, United States Code, Section 2241.

Defendant and the Government agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in 18 U.S.C. § 3742(b). If, however, the Government appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant acknowledges that this waiver may result in the dismissal of any appeal or collateral attack Defendant might file challenging his/her conviction or sentence in this case. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the Government, be remanded to the District Court to

4



determine whether Defendant is in breach of this agreement and, if so, to permit the Government to withdraw from the plea agreement.

(H)    Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present Indictment as well as any and all criminal violations about which the Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The Defendant understands that this agreement does not require the Defendant to implicate any particular individual or individuals or to "make a case," rather it requires the Defendant to be truthful and to testify truthfully whenever called upon.

(I)    Defendant and the Government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(J)    The United States of America and Defendant hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the information, would: (a) not relieve the Defendant of Defendant's plea of guilty; (b) permit the Government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this indictment; (c) permit the Government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or

5



obstruction of justice; and (d) permit the Government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(L)     Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status. Under federal law, a broad range of crimes are removable offenses, including the offense to which Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding over which the District Court does not have jurisdiction. Defendant understands that no one, including Defendant's attorney, or the District Court, can predict to a certainty the effect of this conviction on Defendant's immigration status. Nevertheless, Defendant affirms that Defendant wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is Defendant's automatic removal from the United States.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)     That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this

6



district against the Defendant.  The United States Attorney agrees to dismiss the remaining counts of the pending Indictment, if any, in exchange for Defendant's plea of guilty to Count One of the Indictment.

(B)    That he further agrees, if the Defendant cooperates truthfully and completely with the Government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to Defendant's cooperation, to make the extent of the Defendant's cooperation known to the sentencing court.  If the Defendant is not completely truthful and candid in his cooperation with the Government, he may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge.  If the cooperation is completed prior to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the Sentencing Guidelines warranting the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range.  If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence.  In either case, the Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the Government.  Any good faith efforts on the part of the Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion.  In addition, should the Defendant fail to cooperate truthfully and completely with the Government, or if the Defendant engages in any additional criminal conduct, the Defendant shall not be entitled to consideration pursuant to this paragraph.

7



(C)    Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the Government by the Defendant in connection with Defendant's cooperation and as a result of the Defendant's plea agreement to cooperate will not be used in determining the applicable guideline range.  Further, the Government agrees not to bring additional charges against the Defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(i), based on any information provided by the Defendant in connection with the Defendant's cooperation, which information was not known to the Government prior to said cooperation.  This does not restrict the Government's use of information previously known or independently obtained for such purposes.

(D)    If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Federal Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive an appropriate downward departure for such acceptance. It is entirely within the Court's discretion whether or not the Defendant would be entitled to any reduction based upon an acceptance of responsibility.  The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

8

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigative Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the Government could prove the following beyond a reasonable doubt:

On December 6, 2021, the FBI and HSI performed a joint operation at 3650 Bold Springs Road, Monroe, Walton County, Georgia (hereinafter Monroe Ranch). A confidential informant (CI) acting on behalf of law enforcement consensually monitored and recorded a conversation with **FAVELA**. **CI** reported **FAVELA** lived at the Monroe Ranch. **FAVELA** claimed that at two locations within the Middle District of Georgia, he had stored up to 800 kilograms of marijuana, cocaine, and methamphetamine between the two ranches. CI observed approximately eight pounds of marijuana located at the Monroe Ranch. **FAVELA** had received approximately 40 pounds of marijuana from California delivered through the mail. **FAVELA** attempted to sell CI

9



marijuana for $350.00 per pound. CI did not purchase the marijuana and requested methamphetamine. **FAVELA** then contacted **LUIS PINA**, aka **"LA PERRA,"** on the phone and attempted to order one or two kilograms of "frio" – a known slang term for methamphetamine. **PINA** agreed to meet **FAVELA** and CI at the Monroe Ranch to further discuss the purchase. **FAVELA** wanted to receive $1000.00 for brokering the deal and any future deals made between CI and **PINA**. CI agreed to meet **FAVELA** and **PINA** at the Monroe Ranch to purchase approximately one kilogram of methamphetamine at a future date.

The FBI and Homeland Security Investigations (HSI), have conducted three controlled purchases, detailed further below, facilitated by **FAVELA**. The controlled purchases were for suspected methamphetamine and cocaine. They occurred on the following dates: December 19, 2021, for approximately 10 ounces of methamphetamine for $3,000; September 29, 2022, for approximately half an ounce of cocaine for $900; and October 6, 2022, for approximately one pound (16 ounces) of methamphetamine. In all these purchases, a CI contacted **FAVELA** via telephone to facilitate the transactions. All purchases were consensually monitored with audio and video surveillance, and Agents maintained physical surveillance. The FBI utilized multiple confidential human sources during the each of the controlled purchases. During each of the controlled purchases, the sources and their vehicles were searched for contraband prior to the transactions. No contraband was located prior to any of the purchases. One of the purchases occurred at a location in the Northern District of Georgia—the Grayson Ranch.

On December 19, 2021, CI purchased approximately 10 ounces of methamphetamine from **FAVELA** at the Monroe Ranch. The methamphetamine was purchased using $3,000 of FBI funds. CI confirmed the identity of **FAVELA** and called **FAVELA** with a previously identified phone

10



number. Agents verified number saved in **CI's** phone as 770-756-0142. CI was consensually monitored throughout the controlled substance purchase

On September 29, 2022, CI attempted to purchase one kilogram of methamphetamine from **FAVELA** at the Monroe Ranch. Upon arrival, CI was greeted **PINA**. **PINA** called **FAVELA** and verified **CI's** identity. **PINA** informed CI that he/she was at the wrong location/ranch and directed CI to "La Sierra," located at 250 Grayson New Hope Road, Grayson, Gwinnett County Georgia (hereinafter Grayson Ranch). Agents had prior knowledge of **FAVELA'S** association with the Grayson Ranch from a previous attempted controlled purchase between **SA-017-DG** and **FAVELA** on January 20, 2022. At that time, **FAVELA** was unable to supply the requested narcotics; however, **FAVELA** agreed to broker future multiple kilogram transactions of methamphetamine with CI and his source of supply. Before CI left the Monroe Ranch, **PINA** offered to sell CI ounces of methamphetamine he currently had in his possession. CI advised **PINA** he/she wanted to deal directly with **FAVELA** to avoid conflict. **PINA** instructed CI to meet with **DIEGO GARCIA** (hereinafter **GARCIA**) to facilitate the one-kilogram transaction of methamphetamine at the Grayson Ranch. Additionally, **PINA** provided CI telephone numbers for **FAVELA** and **GARCIA**. **CI** called **FAVELA** on the number provided by **PINA**. **FAVELA** instructed CI to go to "La Sierra," and he would meet CI in 45 minutes. **FAVELA** informed CI if the kilogram of methamphetamine was not at the Grayson Ranch, he would send **PINA** with half of a kilogram. The FBI instructed CI to drive to the Grayson Ranch to meet with **GARCIA**. During the transaction **GARCIA** agreed to sell CI up to 10 kilograms of methamphetamine for $4,000 per kilogram. **GARCIA** then asked CI if he/she was interested in purchasing cocaine and he could supply a kilogram for $21,000 per kilogram right then. CI agreed to purchase a sample of cocaine. **GARCIA** sold **CI** approximately thirteen (13) grams of cocaine for $900 with FBI funds.

11



**GARCIA** attempted to front CI two kilograms of cocaine stored at the Grayson Ranch, but CI declined the offer to avoid being indebted to **GARCIA**

On October 6, 2022, a CI purchased approximately 16 ounces of methamphetamine from **FAVELA** at the Monroe Ranch. The methamphetamine was purchased using $2,300 of FBI funds. CI independently identified **FAVELA** during the transaction from previous interactions. The controlled purchase was arranged via telephonic communications between CI and **FAVELA** several days prior. Additionally, CI telephonically contacted **PINA** during the controlled purchase. **PINA** was present with **FAVELA** during the transaction. CI was consensually monitored throughout the controlled substance purchase

The substance obtained via controlled purchase on October 6, 2022 was submitted for laboratory analysis. The results of the testing showed the substance to be 426 grams of 99% pure methamphetamine hydrochloride.

(8)

ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this __22__ day of ___September___, __2025__

_____     *William R. Keyes*
PETER D. LEARY
UNITED STATES ATTORNEY

BY: _____
LEAH E. MCEWEN
ASSISTANT UNITED STATES ATTORNEY

12

13

I, Jose Guadalupe Favela, have read this agreement and had this agreement read to me by my attorney, Bruce S. Harvey.  I have discussed this agreement with my attorney, and I fully understand it and agree to its terms.

Jose Guadalupe Favela
DEFENDANT

I, Bruce S. Harvey, attorney for Defendant Jose Guadalupe Favela, have explained the Indictment and the Government's evidence received through discovery and my investigation of the charge to Defendant.  I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial.  I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant.  To the best of my knowledge and belief, Defendant understands this agreement.

Bruce S. Harvey
ATTORNEY FOR DEFENDANT

14